103 F.3d 139
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
William A. NEILSON, Plaintiff-Appellant,
v.
Mary E. BECK, Defendant-Appellee.
William A. NEILSON, Counter-Defendant-Appellant
v.
Mary E. BECK, Defendant Counter-Claimant-Appellee
 Nos. 95-35474, 95-36114.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 17, 1996.
Decided Nov. 18, 1996.
Rehearing Denied Sept. 10, 1997.
 
 Before: PREGERSON, BOOCHEVER, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 William A. Neilson brought this diversity action alleging that his ex-wife, Mary E. Beck, committed fraud and breached a settlement agreement by seeking certain tax refunds. Although the agreement did not expressly prohibit Beck from seeking the refunds, it did acknowledge that Beck had "paid" these tax obligations. Neilson contends that the obligations were not "paid" because, at the time the parties executed the settlement agreement, Beck had already filed for the refunds. The district court granted summary judgment in favor of Beck on both claims and awarded her attorneys' fees pursuant to the settlement agreement. Neilson appeals.
 
 DISCUSSION
 
 3
 A grant of summary judgment is reviewed de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 
 4
 In a diversity action, the substantive law of the forum state applies. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). A district court's interpretation of state law is reviewed under the same independent de novo standard as are questions of federal law. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).
 
 1. The Fraud Claim
 
 5
 The district court granted Beck's motion for summary judgment on Neilson's fraud claim after finding that the release provision in the settlement agreement barred the claim. Neilson challenges the district court's interpretation of the release agreement.
 
 
 6
 "A release agreement is a contract subject to the rules of contract construction and interpretation." Ristau v. Wescold, Inc., 868 P.2d 1331, 1333 (Or.1994).
 
 
 7
 Neilson agreed to a release which provided that he did "release, acquit and forever discharge Beck ... of and from any and all, known or unknown, causes of action, claims, demands, damages, expenses, including attorneys' fees and other litigation costs, which [he] ever had, now ha[s] or hereinafter may have, against Beck, except as otherwise provided for under this [Settlement] Agreement." Oregon law does not require a release agreement to make "an explicit reference to fraud claims arising contemporaneously with the release agreement in order to bar recovery." See Ristau, 868 P.2d at 1334 (finding that statutory claim of fraud in the inducement as to contemporaneously entered agreements was barred where party signed a release agreement barring "any and all claims, demands, rights, damages, expenses, loss of compensation, suits and causes of action, whether known or unknown, now existing"). The fraud alleged in the present case, however, arose from the agreement actually containing the release provision, while the fraud alleged in Ristau arose from a separate agreement executed at the same time as the release agreement. Before Ristau reached the Oregon Supreme Court, the Oregon Court of Appeals ruled that specific language mentioning fraud in the inducement would be necessary to release a claim that the release agreement itself was induced by fraud. Ristau v. Wescold, Inc., 852 P.2d 271, 273 (Or.Ct.App.1993), rev'd on other grounds, 868 P.2d 1331 (Or.1994). While the Oregon Supreme Court reversed the appellate court's decision, it did not address whether specific language would be required to release a claim that the release agreement itself was induced by fraud. Ristau, 868 P.2d at 1334 n. 5. By not addressing the question, the Supreme Court allowed the Court of Appeals's holding as to a fraudulently induced agreement to stand as an expression of Oregon law on this point. A fraudulent inducement claim can only be released by a specific clause that "allocate[s] the risk of misrepresentation or nondisclosure in inducing the agreement." Ristau, 852 P.2d at 273 (Or.Ct.App.). Neilson's fraudulent inducement claim, then, is not barred by the general release in the settlement agreement.
 
 2. The Contract Claim
 
 8
 The district court granted Beck's motion for summary judgment on Neilson's breach of contract claim after finding that neither the express language of the settlement agreement nor the implied covenant of good faith and fair dealing precluded Beck from seeking refunds from the Internal Revenue Service (IRS) and the Oregon Department of Revenue (ODR). Neilson challenges the district court's interpretation of the settlement agreement.
 
 
 9
 We reject Neilson's argument that there was a genuine issue concerning whether Beck breached the express terms of the settlement agreement. No language in the settlement agreement addressed the "innocent spouse" provision of the Internal Revenue Code, prohibited Beck from obtaining a refund of the taxes she paid, nor obligated Beck to assume full responsibility for the joint and several tax obligations relating to the years 1980 and 1981. That being so, Beck did not breach the express terms of the settlement agreement by seeking refunds from the IRS and the ODR.
 
 
 10
 There is, however, a genuine issue concerning whether Beck breached the implied covenant of good faith and fair dealing. Under Oregon law, every contract contains an implied duty of good faith and fair dealing. Comini v. Union Oil Co., 562 P.2d 175, 176 (Or.1977). This duty prohibits either party from engaging in any act that will destroy or injure the right of the other to receive the benefits of the bargain or that may undermine the justified expectations of the parties. Best v. United States Nat'l Bank, 739 P.2d 554, 557-58 (Or.1987). It is, however, " 'only the objectively reasonable expectations of the parties that will be examined in determining whether the obligation of good faith has been met.' " Pacific First Bank v. New Morgan Park Corp., 876 P.2d 761, 767 (Or.1994) (quoting Tolbert v. First Nat'l Bank, 823 P.2d 965 (Or.1991)).
 
 
 11
 The district court found that it was unreasonable as a matter of law for Neilson to expect that Beck would not seek refunds from the IRS and the ODR. The district court's interpretation does not give sufficient consideration to the recital on the first page of the settlement agreement which provided that "THE TRUTH, ACCURACY, AND COMPLETENESS OF EACH RECITED FACT IS EXPRESSLY ACKNOWLEDGED BY THE PARTIES AND THIS ACKNOWLEDGEMENT IS INTENDED TO BE CONTRACTUALLY BINDING UPON THE PARTIES." This recital is significant because one of the recited facts in the settlement agreement provided that "the Obligations were paid by Beck ... when she satisfied the balance due on the second mortgage and also paid taxes, penalties and interest totalling $87,391.73."
 
 
 12
 Webster's Dictionary indicates that one meaning of "to pay" is "to discharge indebtedness for." Webster's Third New International Dictionary 1659 (3d ed. 1976). Based on this definition, Neilson could reasonably believe that he was paying $32,400 and dismissing his bankruptcy petition based on Beck's contractually binding acknowledgment that she discharged the couple's indebtedness to the IRS and the ODR. Because Neilson was entitled to believe that Beck discharged the tax obligations, it would also be objectively reasonable for Neilson to believe that Beck would not seek a refund from the IRS or the ODR.
 
 
 13
 Therefore, the district court's interpretation of the settlement agreement is not the only possible interpretation. A jury could conclude that Beck breached the implied covenant of good faith and fair dealing by seeking the refunds.
 
 CONCLUSION
 
 14
 We reverse the district court's grant of summary judgment and remand for the jury to decide whether Beck fraudulently induced Neilson to enter the settlement agreement and whether her efforts to obtain refunds from the IRS and the ODR violated the implied covenant of good faith and fair dealing. We vacate the award of attorney's fees to await the eventual determination of the prevailing party. Pursuant to the settlement agreement we award Neilson attorneys' fees as the prevailing party on appeal, and we request the District Court to determine the appropriate amount of the award.
 
 
 15
 REVERSED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3