F I L E D
United States Court of Appeals
Tenth Circuit

OCT 20 1997

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

VITO DESARIO, as Guardian Ad
Litem for Carly Mitchell,

        Plaintiff - Appellant,

        v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

        Defendant - Appellee.

No. 96-4070
(D. Ct. No. 95-CV-953)
(D. Utah)

---

ORDER AND JUDGMENT[*]

---

Before TACHA and LUCERO, Circuit Judges, and DANIEL,[**] District Judge.

---

Carly Mitchell brought this declaratory judgment action in Utah state court,

which the defendant removed to the United States District Court for the District

of Utah, to determine the extent of coverage provided by an automobile insurance

policy.  She and defendant State Farm Mutual Automobile Insurance Company

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Wiley Y. Daniel, United States District Judge for the District of
Colorado, sitting by designation.

both motioned for summary judgment. The District Court granted State Farm's motion on the grounds that Wyoming law applies to this suit and that under Wyoming law, State Farm already has met its obligations under the policy. Carly appeals, and we exercise jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons set out below, we affirm.

## BACKGROUND

On September 4, 1994, the plaintiff was a passenger in her mother's automobile when the car collided with another vehicle in Salt Lake City, Utah. Carly suffered severe injuries in the accident. She and her mother, Rosanna Mitchell, who has an insurance policy with State Farm, have incurred over $29,000 in medical expenses as a result. State Farm has paid those bills, and there is no dispute here regarding them.

Through her guardian ad litem, however, the plaintiff sued her mother Rosanna for her personal injuries. They settled for the maximum insurance coverage available. State Farm tendered $25,000 under Rosanna's liability coverage policy but refused to pay more, citing a partial family exclusion (or "step-down" clause[***]) contained in the policy. The policy normally provides for $100,000 of liability coverage. However, the step-down clause limits liability

---

[***] A step-down clause is one that reduces the level of coverage provided in certain situations. See Cullum v. Farmers Ins. Exch., 857 P.2d 922, 923 n.2 (Utah 1993).

2

coverage to the minimum required by law when, as in this case, the insured is sued on a bodily injury claim by a member of her own household. Although the policy does not explicitly identify that legal minimum, in Wyoming it is $25,000 (as it is in Utah). See WYO. STAT. ANN. § 31-9-405(b)(ii) (Michie 1997); UTAH CODE ANN. § 31A-22-304(1)(a) (Michie 1994). Rosanna Mitchell entered into the insurance contract with State Farm in Wyoming, and the policy was drafted by State Farm to conform with Wyoming law. Rosanna and Carly are both Wyoming residents. Carly brought this suit to obtain a declaratory judgment that the policy provides $100,000 in coverage in this case. Carly concedes that if Wyoming law applies, the step-down clause is valid and State Farm is entitled to summary judgment. She argues, however, that Utah law should control. According to her, the step-down clause is invalid under Utah law and she should be entitled to the full $100,000 limit of the policy rather than the $25,000 limit specified in the family exclusion.

**DISCUSSION**

In a diversity case, if different states' laws would produce different results, a federal court must look to the conflict of law rules of the forum state to determine which state's law will control. See Mountain Fuel Supply v. Reliance Ins. Co., 933 F.2d 882, 887-88 (10th Cir. 1991) (citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487 491 (1941)). Thus, this court must apply Utah's choice of

3

law rules. To resolve a conflict of laws question in a contract dispute, the Utah courts use the "most significant relationship" test set out in the RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 188. American Nat'l Fire Ins. Co. v. Farmers Ins. Exch., 927 P.2d 186, 190 (Utah 1996). Under this test, the court applies the law of the state that has the most significant relationship to the contract. Mountain Fuel, 933 F.2d at 888; RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(1) (1971). The District Court found that Wyoming, and not Utah, has the most significant relationship to the insurance contract at issue here. We agree with the District Court.

Under the most significant relationship test, the following factors should be considered in determining what law applies to the contract:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2). Given that the contract was negotiated in Wyoming, the Mitchells are residents of Wyoming, and the car itself (the subject matter of the contract) was registered and garaged in Wyoming, a balancing of the Restatement factors weighs heavily in favor of the application of Wyoming law. Furthermore, § 193 emphasizes the "principal location of the insured risk" as "the most important contact to be considered in the choice of the

4

applicable law" for casualty insurance contracts. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 and Cmt. b; see also American Nat'l, 927 P.2d at 190 (discussing § 193). In this case, the principal location of the automobile was Wyoming. Carly emphasizes that the accident occurred in Utah and that she received treatment for her injuries there. In light of the significant contacts with Wyoming, however, these facts are insufficient justification for applying Utah law.

Were there any doubt, the Utah Supreme Court's recent decision in American National makes the choice clear. American National involved insureds who resided in Idaho, an automobile registered in Idaho, an insurance policy issued in Idaho -- and an accident that occurred in Utah. American Nat'l, 927 P.2d at 187. Applying the most significant relationship test, the Utah Supreme Court found that Idaho law applied to the case. Id. at 188-89. The court reasoned that the insurance contract "clearly has a significant relationship with Idaho, having been negotiated and executed there and involving an Idaho resident and an automobile which is registered and garaged in that state." Id. The court noted National's claim that the contract had a substantial relationship to Utah because that is where the accident occurred, but it swiftly rejected that argument in light of the contract's overwhelming ties to Idaho. "Under the most significant relationship test, the location of the accident is not sufficient to outweigh

numerous other contacts, particularly when reliance upon the law of the forum state would seriously alter the original bargain and disrupt the expectations of the parties." Id. at 190-91. Thus, we agree with the District Court that Utah's conflict-of-law rules direct that Wyoming law should control.

It may not even be necessary to go through the conflict-of-law analysis to resolve this dispute. As State Farm points out, the Utah insurance statutes do not, by their own terms, apply to a policy issued in Wyoming to a Wyoming resident. In arguing that the family step-down clause is invalid, Carly relies on sections 31A-21-106, 31A-22-303, and 31A-22-309 of the Utah state code. These statutes are located in Chapters 21 and 22, Title 31, of the Utah code, which apply only to insurance policies, applications and certificates that are:

> (a) delivered or issued for delivery in this state [Utah];
> (b) on property ordinarily located in this state;
> (c) on persons residing in this state when the policy issued; and
> (d) on business operations in this state.

UTAH CODE ANN. § 31A-21-101(a) (Michie 1994). None of these criteria apply to Rosanna Mitchell's State Farm insurance policy. Her policy was delivered to her at her Wyoming address and was issued under Wyoming law. The insured property was not ordinarily located in Utah, but rather in Wyoming. Rosanna Mitchell did not reside in Utah when the policy was issued, nor has she ever claimed to reside in Utah. She was a resident of Wyoming at the time the policy was issued, at the time of the accident, and at the time this lawsuit was filed.

6

Finally, Rosanna Mitchell has not claimed that either she or the insured automobile is involved in business operations in Utah. Thus, the Utah statutes on which Carly relies do not apply to this insurance policy.

The only Utah statute relevant to Rosanna Mitchell's contract is § 41-12a-301, which sets out the requirements for non-resident owners of vehicles that have been present in Utah for less than 90 days. This statute requires that such owners "shall maintain the type and amount of owner's or operator's security required <u>in his place of residence</u> in effect continuously throughout the period the motor vehicle remains in Utah." UTAH CODE ANN. § 41-12a-301(2)(b)(I) (Michie 1994) (emphasis added). Thus, Utah's only directive with respect to Rosanna Mitchell's automobile insurance policy is that it be adequate under the law of Wyoming, her place of residence. It is undisputed that her policy was adequate under Wyoming law.

While conceding that the Utah statute incorporates the standards of Wyoming law in this case, plaintiff argues that Utah public policy prohibits the "unfair result" that would be reached under Wyoming law and urges us to find the step-down clause void on public policy grounds. A court may apply the law of the forum state if it finds that applying another state's law would violate the "strong public policy" of the forum state. <u>See</u> <u>Bullington v. Mize</u>, 478 P.2d 500, 504-05 (Utah 1970). Courts, including those of Utah, construe the public policy

7

exception very narrowly. The doctrine is reserved for situations in which the foreign law "would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal [of the forum state]." Loucks v. Standard Oil, 120 N.E. 198, 202 (N.Y. Ct. App. 1918), quoted in Bullington, 478 P.2d at 504. A mere difference in the laws of the two states will not justify refusing to apply the foreign law. See Alexander v. Beech Aircraft Corp., 952 F.2d 1215, 1223 (10th Cir. 1991). We find that the application of Wyoming law in this case does not offend any strong public policy of Utah.

Carly argues the Utah Supreme Court would hold family exclusion clauses written after 1986 per se invalid. In 1987, a three-way split in the Utah Supreme Court resulted in a narrow majority of the court apparently agreeing, in dicta only, that clauses reducing liability coverage when a family member of the insured sues are void in policies written after 1986. See State Farm Mut. Auto. Ins. Co. v. Mastbaum, 748 P.2d 1042, 1044 (Utah 1987) (holding family exclusion clause at issue, which was written before 1986, valid as to coverage in excess of statutory minimum); id. at 1044-45 (Zimmerman, J. concurring) (stating such clauses written after 1986 are invalid); id. at 1045-49 (Durham, J., dissenting) (stating that all such clauses are invalid). However, as State Farm points out, the Utah Supreme Court more recently declared that step-down clauses reducing liability

coverage for permissive users (i.e., an insured user of the automobile other than the policyholder or a member of the policyholder's family) are not void so long as they do not reduce coverage below the statutory minimum; this ruling arguably casts doubt on the dicta in Mastbaum. See Cullum v. Farmers Ins. Exch., 857 P.2d 922, 923-24 (Utah 1993). Given the somewhat confused status of step-down clauses in Utah law, we cannot say that Utah has a "strong public policy" against them, such that its courts would refuse to enforce such a clause.

Carly Mitchell also asserts that Utah public policy prevents the enforcement of the step-down clause because it contains an incorporation-by-reference, that is, it incorporates the statutory minimum level of coverage without specifying what that level is. Utah prohibits such incorporations-by-reference in Utah insurance contracts. See UTAH CODE ANN. § 31A-21-106(1) (Michie 1994); Cullum v. Farmers Ins. Exch., 857 P.2d 922, 924-27 (Utah 1993). This argument is without merit. In American National, the Utah Supreme Court enforced an incorporation-by-reference clause in an out-of-state insurance policy. Thus, it is not against the public policy of Utah to enforce an incorporation-by-reference clause in an out-of-state contract when the clause is valid under the other state's law.

Plaintiff's public policy arguments are particularly unpersuasive in light of the fact that the Utah legislature has expressly limited the requirements and protections of the Utah insurance statutes to policies issued to Utah residents. Cf.

Bullington, 478 P.2d at 504 (rejecting public policy argument that Utah courts should extend protection of Utah's trust deed statute to trust deed on Texas land, noting legislature's express intent that statute apply only to deeds on Utah property).

## CONCLUSION

Because we determine that the law of Wyoming applies to this action, State Farm is entitled to summary judgment. Thus, we affirm the holding of the District Court.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge

10